<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LEEDRUE HURT,**<br><br>        *Plaintiff,*<br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>        *Defendant.* | Civil Action No. 19-18627<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Leedrue Hurt's ("Plaintiff") request for review of the Administrative Law Judge's ("ALJ") 2019 decision regarding the Commissioner of Social Security's (the "Commissioner") denial of Plaintiff's application for Disability Insurance and Supplemental Security Income ("SSI") Benefits, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth in this Opinion, the Commissioner's decision is **REVERSED**.

**I.   STANDARD OF REVIEW AND APPLICABLE LAW**

   A.  **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but his factual findings must be affirmed if they are supported by substantial evidence. <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>McCrea v. Comm'r of Soc.</u>

1

Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence is "less than a preponderance").

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. §§ 404.1520(a), 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920.

"Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972; id. § 404.1572. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. §§ 404.1420(a)(4)(ii), 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); id. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(c).

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(d). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the claimant's "residual functional capacity" ("RFC") to perform work activities despite the limitations from the claimant's impairments. 20 C.F.R. §§ 416.920(e), 416.945. In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 416.920(e). Then, at step four, the Commissioner must decide if the claimant has the RFC to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(f). If so, then the claim for benefits must be denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.960(b)(3).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c); id. § 404.1520(a)(4)(v). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. General Background

Plaintiff was born on November 18, 1958, and he applied for Disability Insurance and SSI benefits in 2006 when he was 47 years old. See Administrative Transcript ("Tr.") 211-18. Plaintiff alleged disability as of January 17, 2006 due to bilateral knee pain and hearing loss. Id.; Tr. 234. Plaintiff has an eleventh-grade education and past relevant work as a garbage collector, custodian, and appliance and furniture deliverer. See Tr. 17, 32-33.

In a Function Report dated December 14, 2006, Plaintiff reported that he lived in an apartment with his family. Tr. 261. He stated that due to his knee pain, he can no longer run, walk, squat, or climb steps, and that if he is standing too long, he develops leg pain. Tr. 262-65. He also stated that his knee pain impacts his sleep, and he is only able to walk a half block before he has to take a break due to the pain. Id. Per his doctor's recommendation, he uses a cane, brace, and crutches daily to help alleviate his pain. Tr. 267. Plaintiff also stated that he is experiencing hearing loss and that he wears hearing aids daily, as prescribed by a doctor. Tr. 265-67.

### B. Medical History

The Commissioner has summarized the medical evidence in his brief, see Def. Mem., ECF No. 16, at 2-7, and the parties are quite familiar with Plaintiff's impairments based on the

prolonged history of this case. The Court will address the medical evidence only where necessary to the adjudication of Plaintiff's claim in Section III, infra.

### C. Procedural History[1]

#### 1. Prior ALJ and Appeals Council Determinations

Plaintiff filed an application for Disability Insurance and SSI on March 6, 2006, alleging that he became disabled on January 17, 2006. Tr. 211-18. His claims were initially denied on January 19, 2007. See Tr. 94. Plaintiff requested that the Commissioner reconsider his claims, and on October 26, 2007, his claims were again denied. See id.

On November 5, 2007, Plaintiff requested that an ALJ review his claims. See id. In a decision dated August 31, 2009, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 91-102 ("2009 ALJ Decision"). Plaintiff requested that the Appeals Council review the 2009 ALJ Decision, and on October 27, 2010, the Appeals Council granted Plaintiff's request, vacated the decision, and remanded Plaintiff's case to an ALJ to resolve several distinct issues, including evaluating whether Plaintiff's obesity qualified as a severe impairment, and whether Plaintiff was able to complete the requirements of light work, despite not being able to stand or walk for more than two hours in an eight-hour workday. Tr. 103-06 ("2010 Appeals Council Remand").

On March 1, 2011, an ALJ reconsidered Plaintiff's case in light of the Appeals Council remand and issued a partially favorable decision, concluding that Plaintiff was disabled within the meaning of the Act as of his fiftieth birthday—November 18, 2008—when his age category

---

[1] This case has had a long and tortured history. The Court assumes that the parties are familiar with the procedural history, so the Court will summarize the prior proceedings and elaborate on only those proceedings that are relevant to this Opinion.

5

changed.[2] Tr. 7-19 ("2011 ALJ Decision"). The ALJ therefore denied Plaintiff benefits between January 17, 2006, the alleged onset of his disability, and November 18, 2008 (the "At-Issue Time Period"), but granted benefits as of November 18, 2008. Id. On June 29, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1-4.

Plaintiff timely commenced an action in this Court on December 8, 2011, disputing the issue of disability during the At-Issue Time Period. Hurt v. Comm'r of Soc. Sec., 11-5043 (D.N.J.). On March 2, 2012, Plaintiff filed a letter in accordance with Local Rule 9.1 setting forth his general objections to the Commissioner's denial of benefits. Id., ECF No. 11. The Commissioner responded on March 7, 2012 by stipulating to reverse the prior final decision and remand for further administrative action. Id., ECF No. 12. The stipulation was signed by Hon. Joel A. Pisano on March 12, 2012. Id., ECF No. 13.

Citing the Court's order, the Appeals Council affirmed the ALJ's prior determination that Plaintiff was disabled as of November 18, 2008 but vacated the decision with respect to the determination that Plaintiff was not disabled during the At-Issue Time Period. Tr. 508-13 ("2012 Appeals Council Remand"). On the latter issue, the Appeals Council remanded the case to an ALJ to resolve several distinct issues, including conducting a more robust evaluation of the examining source opinions, as well an evaluation of whether Plaintiff's obesity and bilateral hearing loss— which the ALJ considered to be severe impairments—affect the Plaintiff's functioning. Tr. 510-11.

---

[2] An individual under the age of 50 is considered a "younger person," which means that the Commissioner "generally do[es] not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(c). That said, "[i]n some circumstances, [the Commissioner] consider[s] that persons ages 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45." Id. An individual aged 50-54 is considered a "person closely approaching advanced age," which means that that the Commissioner "will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d).

In a decision dated December 12, 2012, an ALJ again denied Plaintiff disability during the At-Issue Time Period. Tr. 514-29. Again, Plaintiff requested the Appeals Council review the 2012 ALJ decision, and on April 5, 2013, the Appeals Council granted Plaintiff's request and remanded the case to an ALJ based on similar reasons put forward in the 2012 Appeals Council Remand. Tr. 530-34.

On August 28, 2013, an ALJ denied Plaintiff benefits for the At-Issue Time Period for the fourth time. Tr. 414-32 ("2013 ALJ Decision"). On March 10, 2015, the Appeals Council granted Plaintiff's request for review of the ALJ's decision but concluded that Plaintiff presented no reasons to disturb the ALJ's decision. Tr. 405-08.

### 2.  2017 District Court Decision

Plaintiff once again timely commenced an action in this Court on May 12, 2015, disputing the issue of disability during the At-Issue Time Period. Hurt v. Comm'r of Soc. Sec., 15-3287 (D.N.J.). The matter was fully briefed by both parties and on July 25, 2017, Hon. Peter G. Sheridan issued an order vacating the 2013 ALJ Decision, because the ALJ had failed to support its determination with substantial evidence. Id., ECF No. 14. The Court held that in reaching the conclusion that Plaintiff could perform sedentary work, the ALJ ignored evidence on the record from a state medical consultant, Dr. Park, who agreed with Dr. Wu, Plaintiff's examining physician, that Plaintiff could stand for only less than two hours a day. Id. at 19. As the Court explained, an RFC that Plaintiff could perform sedentary work is incompatible with Social Security Ruling 96-9p, which recognizes that an individual must be able to stand for at least two hours for it to be said that he or she can perform sedentary work. Id. at 18-19. Based on this conclusion, the Court ordered that the final decision of the Commissioner be remanded for further proceedings. Id. at 26.

### 3. 2019 ALJ Decision

On August 9, 2018, the Appeals Council vacated the Commissioner's final decision and remanded to an ALJ "for further proceedings consistent with the order of the court." Tr. 767. Plaintiff appeared at a hearing before ALJ Beth Shilling on March 26, 2019 in Newark, New Jersey. See Tr. 681. Plaintiff was represented by counsel at the hearing. See id. On June 5, 2019, the ALJ issued a fifth decision, at issue in the instant action, concluding that Plaintiff was not disabled within the meaning of the Act during the At-Issue Time Period. Tr. 656-80 ("2019 ALJ Decision").

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the At-Issue Time Period. Tr. 661.[3] At step two, the ALJ concluded that Plaintiff's hearing loss, degenerative joint disease of the right knee, torn medial meniscus of the right knee, and chronic obstructive pulmonary disease ("COPD") qualified as severe impairments. Tr. 661-62. At step three, the ALJ found that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairment. Tr. 662.

Before moving on to step four, the ALJ found Plaintiff's RFC for the At-Issue Time Period to be as follows:

> After careful consideration of the entire record, I find that, during the period in adjudication, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.976(a) except could not climb ladders/ropes/scaffolds or work with heavy machinery or at heights; and occasionally climb stairs/ramps, crouch, crawl, stoop, kneel and balance. The claimant could have no exposure to environmental pollutants, extremes of temperature or humidity. The claimant could have occasional contact with the general public, coworkers and supervisors, contact being face to face to account for hearing

---

[3] In the subsection header, the 2019 ALJ Decision states "The claimant did engage in substantial gainful activity" during the At-Issue Time Period. Tr. 661. But, based on the ALJ's explanation and an examination of the evidence, it seems the ALJ intended to conclude that Plaintiff did not engage in substantial gainful activity. See id. ("The record does not show earnings from January 17, 2006 through November 18, 2008.") (citing Tr. 896, 898).

8

> issues. The claimant requires a sit/stand option at will within the work station while remaining on task.

Tr. 662-63. In reaching the RFC determination, the ALJ considered Drs. Park and Wu's determinations that Plaintiff was able to stand/walk for less than two hours but concluded that "such limitation is not supported by the record." Tr. 669. The ALJ explained that instead, "the record suggests the claimant has difficulty with extended walking/standing at one time" and that "such difficulties are accounted for by providing a sit/stand option at will." Id. Additionally, the ALJ considered Plaintiff's moderate-to-severe hearing loss and determined that because Plaintiff showed word recognition of at least eighty percent when he wore hearing aids, the RFC "accounts for claimant's hearing loss by providing for face to face contact in the work setting and the avoidance of workplace hazards." Tr. 664.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 671-72. Nonetheless, based on Plaintiff's age during the At-Issue Time Period as well as his education, work experience, and RFC, and based on the testimony of a vocational expert, the ALJ concluded at step five that jobs exist in the national economy that Plaintiff could perform, such as document preparer, address clerk, and table worker. Tr. 672-73. The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act during the At-Issue Time Period. Tr. 673. On October 2, 2019, Plaintiff timely appealed to this Court.

### III. ANALYSIS

Plaintiff argues that reversal of the 2019 ALJ Decision and payments of benefits is warranted based on the substantial evidence in the administrative record, or, in the alternative, that remand of the decision and order of a new hearing is appropriate. Plaintiff contends that (1) the ALJ failed to discuss Plaintiff's obesity, consider whether such obesity was a severe or non-severe limitation, and consider the contribution of Plaintiff's obesity to his other conditions, Pl.'s Br. at

9

20-24, ECF No. 15; (2) the RFC fails to provide Plaintiff accommodations for his moderate/moderately severe hearing loss, id. at 24-26; (3) the RFC fails to mention that Plaintiff requires use of a cane to ambulate and the vocational expert's review of available occupations thus fails to take such need into account, id. at 26-29; and (4) the ALJ gives partial weight to the testimony of Dr. Wu, Plaintiff's treating physical, and rejects the testimony of Dr. Park, the state medical consultant, but fails to acknowledge that each doctors' testimony supports the other's, contradicting this Court's prior order, id. at 33-35. The Court agrees with the Plaintiff that the ALJ failed to adequately consider Plaintiff's obesity and use of cane in the disability analysis and that reversal and award of benefits is proper in light of the long and tortured history of this case.[4]

### A. The ALJ Failed to Adequately Consider Plaintiff's Obesity

In the 2019 ALJ Decision, the ALJ spends just a few sentences discussing the fact that Plaintiff was obese during the At-Issue Time Period:

> At a hearing held on August 7, 2013, the claimant testified he weighed 240 pounds during 2006 to 2008. He noted his current weight (in 2013) to be 210 pounds. He noted it was easier for him to move around after the weight loss.

Tr. 663. Such a discussion is wholly inadequate in light of prior ALJ holdings, the instructions of the Appeals Council, and relevant law.

In the 2010 Appeals Council Remand of the ALJ's determination that Plaintiff was not disabled within the meaning of the Act, the Appeals Council concluded that the ALJ's decision was inadequate because, inter alia:

> The hearing decision does not contain an evaluation of the claimant's obesity. Specifically, it fails to consider whether his obesity is in fact a severe impairment. The medical evidence suggests the claimant is 5'7" and 220 pounds (BMI 34.5). As provided by Social Security Ruling 02-01p, when obesity is a severe

---

[4] The Court declines to reach Plaintiff's additional arguments.

> impairment, an assessment should be made of the effect it has upon an individual's ability to perform routine movement and necessary physical activity within the work environment. Additionally, the combined effect of obesity with other impairments may be greater than might be expected without obesity and must be considered. Therefore, further evaluation of the claimant's obesity, with specific consideration of whether or not it is a severe impairment, is necessary.

Tr. 104-05. Based on the Appeals Council's command, in the 2011 ALJ Decision, an ALJ concluded that for the At-Issue Time Period, Plaintiff "has had the following severe impairments: left knee arthritis, bilateral hearing loss, bilateral knee pain <u>and obesity</u>." Tr. 13 (emphasis added). Despite this determination, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act during the At-Issue Time Period.

Again, in 2012 and upon a partial vacatur and remand from this Court, the Appeals Council remanded Plaintiff's case to an ALJ, instructing the ALJ to, <u>inter alia</u>, evaluate how Plaintiff's obesity, identified as a severe impairment, impacts the Plaintiff's functioning with regard to the limitations established in the RFC. Tr. 511.

Finally, in a 2013 remand, the Appeals Council once again stated that the ALJ continued to fail to properly consider Plaintiff's obesity:

> The prior hearing decision indicated that the claimant's obesity and bilateral hearing loss are severe impairments. However, the hearing decision at issue does not mention the claimant's obesity. . . . [T]here was no explanation as to why these impairments are not severe impairments, as well as no evaluation as to how they affect the claimant's functioning with regard to the limitations established in the residual functional capacity. Further evaluation of the claimant's obesity . . . is warranted.

Tr. 532-33 (internal citations omitted).

The 2019 ALJ Decision at issue in the instant action again fails to properly evaluate (1) whether Plaintiff's obesity is a severe impairment, and (2) how Plaintiff's obesity impacts his

11

residual functional capacity. This failure is not only at odds with the prior Appeals Council remands, but also contravenes what is required by law.

According to the relevant Social Security Rulings, obesity is a medically determinable impairment that may be considered a severe impairment "[i]f the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." SSR 19-2p.[5] The determination of whether obesity is a severe impairment requires "an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe." Id. In the 2019 ALJ Decision, the ALJ concluded that Plaintiff's severe impairments included his right knee injuries and hearing loss; there was absolutely no discussion of whether Plaintiff's obesity was a severe impairment. See Tr. 661.

Additionally, even if obesity is not in and of itself a severe impairment, it may "increase the severity of a coexisting or related impairment(s)" and thus must be considered when assessing an individual's RFC. SSR 19-2p; see also Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) ("An ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step."). Here, it cannot be said that the ALJ "meaningfully consider[ed]" Plaintiff's obesity by mentioning it in a few passing sentences. This is particularly true in light of Plaintiff's arthritic knee injury, which the ALJ considered to be a severe impairment during the At-Issue Time Period. See Tr. 326, 661. Such an impairment is recognized by Social Security Ruling 19-2p as the precise type of severe impairment that would be affected by obesity. See SSR 19-2p ("The

---

[5] SSR 19-2p (effective May 2019) replaced SSR 02-1p two weeks prior to the 2019 ALJ Decision. Both have similar commands in terms of the consideration of obesity throughout the five-step analysis.

combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone.").

Thus, for the reasons stated above, the ALJ's consideration of Plaintiff's obesity is inadequate and not supported by substantial evidence.[6]

**B. The RFC Fails to Account for Plaintiff's Use of a Cane**

In the 2019 ALJ Decision, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work with certain limitations, namely that Plaintiff "requires a sit/stand option at will within the work station while remaining on task." Tr. 662-63. The RFC determination fails to incorporate the fact that Plaintiff requires the use of a cane in order to ambulate, thereby eliminating the use of one hand to perform tasks when Plaintiff is working from the standing position. The 2019 ALJ Decision does acknowledge that Plaintiff requires the use of a cane for ambulation, see Tr. 663, 65-66, 67, but fails to incorporate such limitation into the RFC determination.

This failure creates further flaws in the ALJ's disability determination. On the basis of this RFC, the ALJ concluded that during the At-Issue Time Period, jobs existed in the national economy that the Plaintiff could perform. Tr. 672-73. To assist the ALJ in determining whether

---

[6] The Commissioner cites Carter v. Commissioner of Social Security, 805 F. App'x 140, 143 (3d Cir. 2020), and Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005), for the proposition that "an ALJ adequately considers obesity if the medical records relied on by the ALJ are sufficient to alert him that obesity could be a factor in the severity of the impairment." Comm'r Br. at 10-11, ECF No. 16. Carter and Rutherford, however, are distinguishable. In both cases, the plaintiffs failed to mention obesity as a reason for their inability to work and failed to provide evidence that their impairments were impacted by obesity. Here, the ALJ acknowledges that the administrative record contains evidence that Plaintiff was obese during the At-Issue Time Period, see Tr. 663, 808-810, and a prior ALJ determined that such obesity was a severe impairment, Tr. 13. The combination of these facts, along with the Appeals Council Remand orders, indicate that, at the very least, the ALJ should have addressed whether Plaintiff's obesity was a severe impairment and how it impacted his other identified severe impairments. See Diaz, 577 F.3d at 504.

13

such jobs existed, the ALJ consulted a vocational expert during the Oral Hearing. See Tr. 704-20. Specifically, the ALJ asked the vocational expert whether there are any jobs in the national economy that a hypothetical person with Plaintiff's RFC could perform. Tr. 704. The vocational expert responded in the affirmative and listed three jobs that Plaintiff could perform: document preparer, address clerk, and table worker. Tr. 704-05.

When "an ALJ poses a hypothetical question to a vocational expert that fails to reflect 'all of a claimant's impairments that are supported by the record[,] . . . it cannot be considered substantial evidence.'" Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). Here, because the RFC determination failed to adequately consider Plaintiff's use of a cane, it is clear that the vocational expert likewise failed to consider Plaintiff's use of cane in advising the ALJ that jobs in the national economy exist that the Plaintiff could perform.

The Commissioner argues that according to the relevant Social Security Ruling, sedentary work is appropriate for individuals who use "a medically required hand-held assistive device in one hand." Comm'r Br. at 12 (citing SSR 96-9p). In fact, SSR 96-9p actually states that "an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform lifting and carrying requirements of many sedentary unskilled occupations with the other hand." SSR 96-9p (emphasis added). Because the ALJ failed to question the vocational expert about whether Plaintiff could perform the three jobs in the national economy with the use of only one hand while standing, it is unclear whether such jobs can be performed with only one hand. Moreover, SSR 96-9p also states that "[b]ilateral manual dexterity is needed when sitting but is not generally necessary when performing the standing and walking requirements of sedentary work." Because the ALJ's RFC determinationspecifically allows Plaintiff to perform

14

the sitting requirements of sedentary work from the standing position, such work would likely require the use of both hands. Yet, the ALJ failed to consider whether Plaintiff could perform such tasks while using a cane. This failure renders the 2019 ALJ Decision inadequate and unsupported by substantial evidence.

### C. Reversal is Appropriate

In accordance with 42 U.S.C. § 405(g), this Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" upon a determination that the Commissioner's findings are not supported by substantial evidence. Reversal is appropriate "when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (quoting Podedworny v. Harris, 745 F.2d 210, 222 (3d Cir. 1984)); see also, e.g., Woody v. Sec'y of Health and Human Servs., 859 F.2d 1156, 1163 (3d Cir. 1988) (explaining that reversal is an appropriate remedy when plaintiff has met his burden of establishing a prima facie case of entitlement).

Substantial evidence in the record indicates that Plaintiff is disabled and entitled to benefits. Plaintiff has not worked since November 2005 due to his medical condition. Tr. 234. Plaintiff consistently testified, on several occasions, about the severity of his knee pain, stating that he is unable to walk without severe pain and that he must use a cane to ambulate because his leg pain puts him off balance. See, e.g., id. Plaintiff also stated that he is experiencing hearing loss for which he wears hearing aids daily. Tr. 265-67. Plaintiff's testimony of his symptoms is supported by the statements of both Plaintiff's own doctors as well as the state's consultative medical examiners. See, e.g., Tr. 308-15 (Audiological Consultative and Orthopaedic Consultative

15

Examination Reports, indicating Plaintiff has "moderately severe to severe sensory neural hearing loss in both ears" and "chronic severe pain in bilateral knees, right worse than left with functional limitation").

Moreover, Plaintiff first applied for benefits fifteen years ago. He has had five hearings before an ALJ. This Court has remanded to the ALJ on two prior occasions and the Appeals Council, likewise, has remanded to the ALJ four times due to faulty analysis. In fact, Plaintiff is currently receiving benefits for all but the At-Issue Time Period, a period of less than three years. Despite being ordered, multiple times, to perform a fulsome analysis, the ALJ continues to make reversable errors. In the interest of justice and in order to avoid further delay, the Court concludes that reversal is appropriate. See, e.g., Morales, 225 F.3d at 220 ("The disability determination has already taken ten years and the record is unlikely to change. Furthermore the delay in this case has been caused by deficiencies that are not attributable to any error of the claimant."); Bantleon v. Comm'r of Soc. Sec., No. 09-2888, 2010 WL 2802266, at *13 (D.N.J. July 15, 2010) ("There is no reason to continue to delay the claimant's award when there is substantial evidence in the record that she is disabled.").

### IV. CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **REVERSED**. The case is remanded to the Commissioner with the direction to award Plaintiff the benefits to which he is entitled.

Date: February 26, 2021

        */s Madeline Cox Arleo*
        **Hon. Madeline Cox Arleo**
        UNITED STATES DISTRICT JUDGE